February 18, 2004

Donald C. Holmes, Esq.
205 Main Street
P.O. Box 339
Preston, MD   21655

William M. Coats, Esq.
800 First City Tower
1001 Fannin Street
Houston, TX   77005

W. Breck Weigel, Esq.
221 E. Fourth Street
Suite 2100
Cincinnati, OH   45202

      RE: Foster Wheeler Environmental Corporation v.
        Fluor Fernald, Inc. - C-1-02-0084

Gentlemen:

  For your records, I have enclosed a copy of the recorded settlement conference of February 11, 2004, which has been slightly edited.

  Again, I thank you for the professional manner in which we were able to conclude this matter to everyone's satisfaction.

  Kind regards.

            Very truly yours,


            S. Arthur Spiegel

<u>Foster-Wheeler v. Fluor Fernald</u>,
No. C-1-02-084
Wednesday, February 11, 2004

Judge – This is a tape of a settlement in <u>Foster-Wheeler v. Fluor Daniel</u>. I don't know who will be the speaker, I will ask them to identify themselves. Okay, proceed

Mr. Weigel – Judge for your tape this is Breck Weigel on behalf of Fluor Fernald, here is what Fluor Fernald is willing to do, we are willing to make a flat lump-sum payment for a final settlement in the amount of $9,281,000. We would have a written settlement agreement which would state that Fluor Fernald assumes no responsibility for outstanding subcontractors, that that's the responsibility of Foster Wheeler and there would be an affirmative representation by Foster Wheeler that they will pay them and that there will be an indemnity to Fluor Fernald for any claims by these subcontractors against Fluor Fernald in the future. The subcontractors that we are talking about are ATV (sp) and Qualico (sp), which is basically one; Baraby Sudcliff (sp) is the second; DeBra (sp) is the third; Matel (sp) is the fourth; ProCoat (sp) is the fifth; Solid State is the sixth. We would want the agreement to specifically state that we are not paying any sums toward a settlement with Greg Pilgrim on REA44, that that is the responsibility of Foster Wheeler and it would be subject to the same indemnity. And the only other condition is the one we raised earlier is that Don Holmes would provide some sort of certification in writing providing his opinion that the settlement payment of $9,281,000 is fair and reasonable under the circumstances. As to the time of payment, we talked about ten days which is fine except for that its got to be ten days from the inking of settlement agreement because, you know, we don't want to get ourselves in a position where it takes, you know, nine days to draft a settlement agreement and we've got one day to pay.

Judge – Whose going to draft it in the first instance?

Mr. Coats – Let me just say you are in Newark and I'm traveling to Newark tonight. I'm, I'm prepared to sit down with you and hack one out tomorrow.

Mr. Weigel – I was hoping not to be here tomorrow Bill (laughing). I, I'll be in the office.

Mr. Coats – But the timing of the money is very important to us and ten days from whenever you agree to final jot and piddle of the papers is a lot different than ten days from now.

Mr. Weigel – And I don't know what to tell you other than to tell you that we will work in whatever haste you want and in whatever good faith you want. We're not, it isn't a very complicated agreement but I know most of us on the phone are lawyers and we've all been through this so I don't know if you have a solution Bill we're open to it.

Mr. Coats – Well, one solution I have is let's say its ten days from today and let's you and I work it out tomorrow.

UNIDENTIFIED – Great, I mean exactly. If if there is no settlement, if there is no payment within the ten days, well, no, I mean I think we should be able to set the deadline for ten days and get a settlement agreement between now and then. It gives us a back stop. Breck, I've been through this like you have and I know that these things without such a deadline stretch out.

Judge – Well who is going to be the part . . . where is the document going to be prepared, the settlement agreement?

Mr. Weigel – I would like to do the first draft (he was interrupted) and I will do it . . .

Judge – Where are you located?

Mr. Weigel – I am in Newark right now but I will be going to Cincinnati tonight, assuming we have a deal.

Judge – Do we have a deal?

Mr. Weigel – Your Honor we have a deal provided we have the funds by close of business on the 20th of February, Friday.

Judge – Friday, well that's just, what is that . .

Mr. Weigel – Its gone from ten days to eight days.

Judge – That's a . . .

UNIDENTIFIED – Well, today is the 11th.

Mr. Weigel – Okay, you've gone from ten days to seven days, err, nine, oh well. My math isn't . . .

Judge – Look Gentlemen, let's not fool around, why don't you pick a few days beyond that to give yourself a chance to get the agreement signed by everybody, and get it done and I'm sure it'll be accomplished. I can't see anybody trying to delay this any further.

Mr. Coats – Okay, we'll take the close of business on the following Monday, which what is that date Tim?

Tim – Monday the 23rd, February 23rd.

UNIDENTIFIED – February 23rd, is a Monday.

Mr. Weigel – Mark Sucher, can we get that done?

Mr. Sucher – Assuming the settlement agreement can be done promptly, yes.

Judge – Okay, that's it.

Mr. Coats – A couple of things also is that in the event that we need Fluor's cooperation in connection with resolving any of these subcontractor claims, I assume that will be no problem.

Mr. Weigel – That's correct.

Mr. Coats – Well, then, and too, I think we have to have, particularly with Greg Pilgrim, but with the others too that right to make good faith defenses to the claims, not just to pay anything that somebody might ask us to pay.

Mr. Weigel – I think that's the agreement Bill, that there's your's to deal with anyway you want, subject to the indemnity if they were to rush their's through.

Mr. Coats – Right, right.  Okay.

Judge – There is one final thing, the final fees for services of Don Holmes will be paid, how, by jointly by the parties?

Mr. Holmes – Everybody has been paying fine, not a problem, your Honor.

Judge – Okay.

Judge – All right this is what I'm going to do folks, and Breck you know my practice up here.  We're going to put what we call a sixty day Order on today to the effect that this case is settled, the Court having been advised that this case is settled it is dismissed, with prejudice, however, either party may move within sixty days to reopen in the event the settlement is not consummated and the Court will keep jurisdiction over the settlement.  That way you are protected and we are protected, we at least have our docket cleared.

Mr. Coats – Right.

Judge – All right?  I congratulate all of you for your efforts and I know it has been time consuming and hard work, but I think you have made a wise decision all the way around and I thank Don Holmes particularly for an excellent job in handling this matter for the Court.

Mr. Coats – Well, speaking on behalf of Foster-Wheeler, I would echo the compliment of Mr. Holmes and also it has been very much a pleasure to work in your Court, Your Honor, and we are happy to see this put to bed.

Judge – Thank you.

Mr. Cherry – As an officer of Foster-Wheeler, I would also like to thank Your Honor for moving this to closure but I also appreciate the flexibility and cooperation of the fellows on the Fluor side and look forward to getting this out of the way and being able to go ahead and do some business with you all.

Judge – That's fine, that was Mr. Hansen wasn't it?

Mr. Cherry – No, its Mr. Cherry.

Judge – Mr. Cherry.

Mr. Hansen – I would like to also extend my appreciation Your Honor for using Don Holmes and your persistence to bring us together and I would also like to recognize the professionalism on your team, Mr. Cherry, I think it is something that we would like to get passed so we can all focus on getting on with other work.

Mr. Cherry – I agree with that, thanks, Ron.

Mr. Weigel – . . . Ron, thank you and I always remember that a good settlement's a painful one, right?

Mr. Hansen – Right.

Judge – This is Judge, one further thing to say to Mr. Hansen, I know you are the CEO of all of these projects around the country, your project manager here in Cincinnati testified, as I mentioned, in that case that I was referring to before, I was very impressed with him and what's being done out there, at the Fernald.

Mr. Hansen – Well, we are very proud of our team out there Your Honor and he's got a lot of dedicated people that I think are doing something that is important for the State of Ohio and our Country.

Judge – Okay, I agree with that.  Thank you all

Thank you, bye bye.